FILED
CLERK
9:35 am, Nov 21, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHRISTOPHER FRANCO,

                Plaintiff,           **MEMORANDUM OF
DECISION & ORDER**

      -against-                     2:17-cv-7548 (ADS)

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Law Office of Christopher James Bowes**
*Attorneys for the Plaintiff*
54 Cobblestone Drive
Shoreham, NY 11786
        By:    Christopher James Bowes, Esq., Of Counsel.

**United States Attorneys Office, Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
        By:    Prashant Tamaskar, Esq., Assistant United States Attorney.

**SPATT, District Judge**:

On December 27, 2017, the Plaintiff Christopher Franco (the "Plaintiff" or the "Claimant") commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, Nancy A. Berryhill, the then Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that he was ineligible to receive Social Security disability benefits.

Andrew M. Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 25(d), Saul is hereby substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this action. *See,*

1

*e.g.*, *Pelaez v. Berryhill*, No. 12-CV-7796, 2017 WL 6389162 (S.D.N.Y. Dec. 14, 2017), *adopted by*, 2018 WL 318478 (S.D.N.Y. Jan. 3, 2018).

Presently before the Court are the parties' cross motions, pursuant to FED. R. CIV. P. 12(c), for a judgment on the pleadings. For the reasons that follow, the Plaintiff's motion is denied, the Defendant's cross-motion is granted, and the case is dismissed.

**I.  BACKGROUND**

The Plaintiff is a 50-year-old former corrections officer and high school security guard. He also worked part-time for Home Depot installing cabinets, and performing similar work "off-the-book[s]" for others.

The Plaintiff had previously applied for disability insurance benefits under the Act, and in a May 2011 hearing decision (the "May 2011 Action"), he was awarded a period of disability with an established onset date of December 30, 2003, and a benefit cessation date of March 3, 2008. On October 25, 2011, the Plaintiff again applied for disability insurance benefits under the Act. He alleged that he had been disabled since May 25, 2011 because of a cervical and lumbar disc disease, as well as bilateral carpal tunnel syndrome. The present action originates from this second application for benefits.

The Plaintiff's second claim was denied on May 4, 2012, and he requested a hearing. He appeared with counsel before Administrative Law Judge Bruce MacDougall ("ALJ MacDougall") on February 12, 2013. On February 28, 2013, ALJ MacDougall issued a written decision denying the Plaintiff's claim, reasoning that the Plaintiff retained the capacity to perform a range of light work.

The Plaintiff sought a review by the Appeals Council, and on April 11, 2014, the Appeals Council granted review and remanded the Plaintiff's case for a new decision. On August 14,

2014, the Plaintiff again appeared, with counsel, before ALJ MacDougall. On August 22, 2014, ALJ MacDougall issued a written decision that once again denied the Plaintiff's claims, ruling that the Plaintiff retained the capacity for light work with a sit/stand option permitting him to sit or stand for five minutes every half hour. ALJ MacDougall further determined that even with this limitation, the Plaintiff remained able to work as a security guard. The Plaintiff sought a review by the Appeals Counsel, which denied his request on October 22, 2015.

After the Appeals Counsel denied review, the Plaintiff challenged that decision in December 2015 by filing a civil action, appearing before then United States District Court Judge Joseph F. Bianco. In June 2016, by stipulation and order, the court remanded the case for additional administrative proceedings. In October 2016, the Appeals Counsel remanded the Plaintiff's case for clarification of his past work as a security guard, and also for evaluation of other work that might be available to him.

The Plaintiff next appeared, with counsel, before ALJ April Wexler ("ALJ Wexler"). On June 16, 2017, ALJ Wexler issued a written decision that denied the Plaintiff's claim, ruling that despite having cervical and lumbar spine disc disease, the Plaintiff retained the capacity to work as a surveillance system monitor and as a call-out operator.

The Plaintiff again sought a review by the Appeals Counsel, which denied his request on October 26, 2017. ALJ Wexler's decision became the final decision of the Commissioner upon the Appeals Counsel's denial of the Plaintiff's request for review.

On December 27, 2017, the Plaintiff filed the present action. On April 12, 2019, the parties submitted the Plaintiff's Rule 12(c) motion and the Defendant's Rule 12(c) cross-motion as fully briefed to the Court.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

**II. DISCUSSION**

Briefly, the parties have presented two issues for the Court: (1) whether the ALJ's finding as to the Plaintiff's residual functional capacity had support in the record; and (2) whether, in light of that finding, the ALJ properly ruled that the Plaintiff retained the capacity to work as a surveillance system monitor or call-out operator. The Court finds that the record contained substantial evidence for the ALJ's finding as to the Plaintiff's residual functional capacity, and, that the ALJ also correctly ruled that the Plaintiff retained the capacity to perform those two jobs. Thus, the Court denies the Plaintiff's Rule 12(c) motion, grants the Defendant's Rule 12(c) cross-motion, and dismisses the action.

**A. The Standa rd for Benefits Under the Act**

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20

C.F.R. § 404.1520. *See Rosa v Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa*, 168 F.3d at 77. *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

> Under the five-step sequential evaluation process, the decision-maker decides:
>
> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

## B. The Standard of Review

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, *J.*) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179–71 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 405(g). *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.* (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view;" instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*," *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (Summary Order) (emphasis in original).

In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)

6

(emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-CV-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

C. **The Rule 12(c) Standard**

Both parties filed Rule 12(c) motions. Such motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *See Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint 'must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Peterson*, 594 F.3d 150, 160 (2d Cir. 2010). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)).

D.  **Application to the Facts of This Case**

The Plaintiff asks in his Rule 12(c) motion for the Court to reverse the final administrative decision in his action and remand it for further proceedings. ECF 19. The Plaintiff raises two arguments in his motion, both of them bearing on ALJ Wexler's ruling as to the Plaintiff's residual functional capacity. First, he alleges the record does not support ALJ Wexler's ruling that the Plaintiff retained the residual functional capacity for sedentary work and occasional handling and fingering. *Id.* at 18–22. Second, he contends that, as a result of the erroneous residual functional capacity finding, the ALJ also erred in relying on the testimony of a vocational expert that the Plaintiff could work as a surveillance system monitor and as a call-out operator. *Id.* at 22.

The Plaintiff dedicates most of his Rule 12(c) motion to the first issue, which the Court now briefly summarizes. First, the Plaintiff argues that Dr. Ira Chernoff, his treating physician and an orthopedic surgeon, "completed a detailed medical narrative from which he concluded that [the Plaintiff] was unable to perform sedentary types of work on account of" his

impairments. *Id.* at 19. However, ALJ Wexler assigned little weight to the opinion, using an unsubstantiated rationale that it was not supported by the evidence in the record. *Id.* at 19–20.

Second, the Plaintiff refers to a report by Dr. Osvaldo Fulco—who offered his opinion in the in the May 2011 Action—in which Dr. Fulco opined that the Plaintiff could not use his right hand, and that he was limited to standing and walking for just one hour in an eight-hour workday, and sitting for no more than four hours. *Id.* at 20. The Plaintiff argues that ALJ should have credited these opinions rather than relying on her own lay opinion. *Id.* at 20–21. Third, the Plaintiff argues that ALJ Wexler should have recontacted Dr. Chernoff if she thought his opinion lacked detail, and should have recalled Dr. Fulco "or some other medical advisor to help her make an informed medical decision," or ordered that the Plaintiff attend a post-hearing consultative medical evaluation. *Id.* at 21–22. As to the second issue, the Plaintiff makes no specific arguments as to the vocational expert's testimony, he only asserts that the improper residual functional capacity ruling necessarily tainted the decision as to what jobs the Plaintiff could perform. *Id.* at 22.

The Defendant asks that the Court affirm the Commissioner's decision. ECF 21. It argues that substantial evidence in the record supports the decision that the Plaintiff's impairments did not preclude him from performing certain types of sedentary work. *Id.* at 1, 18–24. Also, the Defendant claims that Dr. Chernoff's opinion is neither consistent with his own treatment records or the record as a whole. *Id.* at 21–22. As to Dr. Fulco, the Defendant argues that the proceeding in which Dr. Fulco provided his opinion concluded in May 2011; that the Plaintiff did not further appeal the decision in that action; that the issue of the Plaintiff's disability status prior to that time is precluded by *res judicata*; and therefore, the Plaintiff's disability status prior to the May 2011 Action is not at issue before the Court. *Id.* at 22. It

9

further asserts that ALJ Wexler was under no obligation to recontact Dr. Chernoff, and that ALJ Wexler did not insert her lay opinion, but relied on the evidence in the record. *Id.* at 23–24. It reiterates these arguments as to the second issue, "[b]ecause Plaintiff's second claim of error is entirely dependent on the issues addressed in his first claim of error." *Id.* at 24.

In reply, the Plaintiff asserts that ALJ Wexler applied her own lay analysis of the evidence in the record, and that the Court should accord her opinion no weight. ECF 22. The Court addresses each of these arguments in turn.

**1. As to Dr. Chernoff**

The handling of Dr. Chernoff's opinion invokes two issues, the treating physician rule, and an ALJ's obligation to recontact a treating physician. Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight" so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue,* No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same).

Although the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567–68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts, *Burgess*, 537 F.3d at 128. The ALJ must consider the following factors if it decides to afford less than controlling weight to the treating physician's opinion: "(1) the frequen[c]y, length, nature, and extent of the treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining

medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (Summary Order); *see also Garcia v. Barnhart*, No. 01-CV-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding however, that the ALJ cannot substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

Here, in summary, the ALJ ruled that the Plaintiff had the residual functional capacity to perform sedentary work, except that he could never kneel, crouch, or crawl: that he must have the option to sit or stand for five minutes every half-hour; and, that he could occasionally handle and finger with his bilateral hands. R. at 436. As to the Plaintiff's ability to stand and sit, Dr. Chernoff opined in May 2017 that the Plaintiff "would have difficulty sitting because of his lower back, and, in my opinion, would have difficulty working even in a sedentary type of position." *Id.* at 817. However, Dr. Chernoff's treatment records for the relevant period provide no other comment on the Plaintiff's ability to sit, and no complaints by the Plaintiff about experiencing pain while sitting. On the other hand, Dr. Jonathan Raanan, the Plaintiff's treating neurosurgeon, observed that the Plaintiff sat comfortably during several examinations between July 2014 and April 2016. *Id.* at 781, 784, 790, 793, 796, 799. Also, a physician's assistant in Dr. Raanan's office made a similar observation in June 2016. *Id.* at 777. At only one point did Dr. Raanan observe the Plaintiff's experiencing difficulty sitting, *id.* at 773, and Dr. Raanan did not make this observation again over the course of multiple visits.

11

Based on the evidence in the record, the ALJ properly assigned little weight to Dr. Chernoff's opinion as to the Plaintiff's ability to stand and sit. In any event, as ALJ Wexler noted in her decision, she did take Dr. Chernoff's opinion into consideration by imposing limitations on how long the Plaintiff could be expected to sit. *Cf. Guadalupe v. Barnhart*, No. 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (noting that "When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions") (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).

As to the Plaintiff's use of his hands, Dr. Chernoff in his medical narrative opined that the Plaintiff would have difficulty using his hands because of his carpal tunnel syndrome. R. at 817. However, the only times that Dr. Chernoff tested the Plaintiff for upper extremity strength, he had given the Plaintiff a result of 5/5, clearly normal. *Id.* at 328–29. Other evidence in the record points to the Plaintiff as having generally intact hand functioning, though he struggles with his grip and the effects of carpal tunnel syndrome. His hand specialist, Dr. Teresa Habacker, noted at the Plaintiff's most recent visit that the Plaintiff experienced a weak grip and decreased sensitivity in his right hand, but that he also had a full range of motion in that hand, and that he could make a full fist. *Id.* at 694. Dr. Dominick Basile, the Plaintiff's primary care physician, observed a full range of motion, albeit with pain in the Plaintiff's right hand, on multiple occasions, though he also declined to provide a medical opinion as to whether the Plaintiff could perform work-related activities. *Id.* at 304, 413, 415, 417, 419. The Plaintiff testified at a hearing that he is able to use a computer, and that he is able to dice vegetables when cooking, although he has issues with holding silverware because of hand numbness, and that he has trouble holding a cell phone. *Id.* at 45–46.

12

After a review of all of this medical evidence, the Court rules that substantial evidence supported ALJ Wexler's determination that the Plaintiff could occasionally handle and finger with his hands. The above-noted evidence reveals that the Plaintiff, while burdened by carpal tunnel syndrome and ongoing problems with hand numbness and grip strength, still maintained the ability to do simple tasks with his hands. *See Clyde v. Comm'r of Soc. Sec.*, No. 18-Civ-6209, 2019 WL 4386032, at *5 (S.D.N.Y. Sept. 13, 2009) (ruling that substantial evidence supported ALJ's ruling that the plaintiff could frequently handle and finger where the plaintiff testified that he was able to cook, and where a consultative examiner's exam was "supported by objective signs and findings . . . showing Plaintiff was not as significantly limited as alleged"); *see also Pirog v. Colvin*, No. 15-Civ-438, 2016 WL 11484450, at *17 (S.D.N.Y. Mar. 7, 2016); *Childs v. Colvin*, No. 15-CV-5991, 2017 WL 4685092, at *2 (E.D.N.Y. Oct. 17, 2017) (finding substantial evidence that the plaintiff could handle or finger with one hand on the plaintiff's medical history, his hearing testimony, and the opinions of doctors).

The Court also rules that ALJ Wexler did not insert her own lay opinion into her ruling. She relied on the above-noted evidence in the record, which, in the Court's view, provided substantial evidence for her decision. *See Gerry v. Berryhill*, No. 17-CV-7371, 2019 WL 955157, at *4 (E.D.N.Y. Feb. 26, 2019) (noting that because the record contained sufficient evidence in support of the ALJ's determination, the ALJ did not rely on his own lay opinion).

2. **As to Dr. Fulco**

As an initial matter, the Plaintiff cites to Dr. Fulco's testimony in the May 2011 Action. ECF 14 at 20 (citing R. at 497, 502). Those cited sections of the record do not show a Dr. Fulco as having testified on the Plaintiff's behalf; however, they do show a Dr. "Polco" as having

13

testified. R. at 497, 502. For purposes of clarity, the opinion still refers to the testimony from the May 2011 Action as coming from Dr. Fulco.

The Court rules that the doctrine of administrative *res judicata* precluded the ALJ, as well as this Court, from considering the claims raised and evidence presented in the May 2011 Action. That doctrine applies where "a prior determination on the same facts and issues made by the Commissioner has become final either by administrative or judicial action." *Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) (Summary Order); *see Davila v. Comm'r of Soc. Sec.*, No. 16-CV-4774, 2018 WL 5017748, at *1 (E.D.N.Y. Oct. 16, 2018) (citing *Navan*). "The application of administrative *res judicata* has been recognized and enforced by the Supreme Court, and the Second Circuit has deemed it appropriate in Social Security Cases." *Stellacci v. Barnhart*, No. 02-Civ-8875, 2003 WL 22801554, at *5 (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S. Ct. 1545, 16 L. Ed. 2d 642 (1966), and *Thompson v. Richardson*, 452 F.2d 911, 913 (2d Cir. 1971).

Given that the Plaintiff received a period of disability as a result of the May 2011 Action, there was no need to appeal the decision, and it has since become final. *See Amato v. Bowen*, 739 F. Supp. 108, 111 (E.D.N.Y. 1990); *see also Davila*, 2018 WL 5017748, at *1 ("Plaintiff did not appeal or otherwise request review of the 2008 ALJ Decision, and the 2008 ALJ Decision therefore became final and administrative *res judicata* applies to her March 3, 2006 claim."). Because administrative *res judicata* applies, the Plaintiff may not invoke evidence raised in the May 2011 Action.

In the alternative, even if administrative *res judicata* does not preclude Dr. Fulco's opinion, the claim still fails. Dr. Fulco's opinion addressed the Plaintiff's disability status during the period between December 2003 and March 2008. It is a separate matter occurring prior to

May 25, 2011, that date that Franco alleges that he again became disabled, and the Commissioner "is not required to consider evidence predating or postdating the relevant time period." *Davis v. Colvin*, No. 14-CV-6373, 2016 WL 368009, at *2 (W.D.N.Y. Feb. 1, 2016); *see also Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 575–76 (S.D.N.Y. 2018) ("We reject this argument because these incidents took place prior to her disability onset date of January 28, 2014, over the course of many years, and thus do not speak directly to her ability to function socially and maintain relationships during the relevant time frame analysis—that is, the time between her alleged disability onset date (January 28, 2014) and the date of the ALJ's decision (February 1, 2016).") (internal citations omitted).

### 3. As to ALJ Wexler's Duty to Make Additional Inquiries

Where there are deficiencies in the administrative record, an ALJ is under an affirmative obligation to develop a plaintiff's medical history, even when the plaintiff is represented by counsel. *Rosa*, 168 F.3d at 79. This obligation arises from the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks omitted).

However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted); *see Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (Summary Order) (citing case law from other circuits for the proposition that "remand is not always required when an ALJ fails in his duty to request opinions, particularly in cases such as this, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity"); *Micheli v. Astrue*, 501 F. App'x 26, 30 (2d Cir. 2012)

(Summary Order) ("Here, the ALJ properly determined that he could render a decision based on the 500-page record already before him.").

An ALJ has "discretion to 'determine the best way to resolve the inconsistency or insufficiency'" when an ambiguity arises concerning a treating physician's opinion. *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 505 (S.D.N.Y. 2014) (quoting 20 C.F.R. § 416.920b). While regulations have been amended to remove the provision requiring an ALJ to recontact a treating physician in the face of an ambiguity, *Quinn v. Colvin*, 199 F. Supp. 3d 692, 709 (W.D.N.Y. 2016), they still "contemplate the ALJ recontacting the treating physician when the additional information needed is directly related to that medical source's opinion." *Owens v. Berryhill*, No. 17-CV-2632, 2018 WL 1865917, at *7 (E.D.N.Y. Apr. 18, 2018) (Spatt, *J.*) (internal quotation marks omitted); *Jimenez v. Astrue*, No. 12-CIV-3477, 2013 WL 4400533, at *11 (S.D.N.Y. Aug. 14, 2013).

Here, the Court rules first that ALJ Wexler did not need to recontact Dr. Chernoff. The record reveals that Dr. Chernoff did not make any findings on the Plaintiff's ability to stand and sit, and in the limited instances in which he observed the Plaintiff's hands, he opined that the Plaintiff had full strength. There is nothing in the record to suggest, and the Plaintiff does not contend, that Dr. Chernoff made further evaluations as to his ability to stand and sit or **use** his bilateral hands. *See, e.g.*, *Muro v. Berryhill*, No. 17-CV-6092, 2019 WL 4933612, at *8 (E.D.N.Y. Oct. 7, 2019) (Spatt, *J.*) (remanding action because "the ALJ . . . should have recontacted Dr. King for the Plaintiff's treatment records, instead of deeming Dr. King's opinion less persuasive because he had failed to provide them.").

Second, the Court rules that, based on the doctrine of administrative *res judicata*, ALJ Wexler should not have contacted Dr. Fulco for further information as to his testimony from a

case that had already become final. In any event, ALJ Wexler was not obligated to contact Dr. Fulco to elaborate on testimony given prior to the relevant time period in this case. Third, the Court rules that ALJ Wexler was under no obligation to seek the counsel of a medical advisor or order a post-hearing consultative examination. *See Watson v. Berryhill*, No. 18-cv-1636, 2019 WL 5592854, at *8 (E.D.N.Y. Oct. 30, 2019) (Spatt, *J.*) (ruling that ALJs have the discretion, not the obligation, to seek an updated consultative examination of a plaintiff); *Faith Grace P. v. Saul*, No. 18-CV-781, 2019 WL 4305484, at *7 (N.D.N.Y. Sept. 11, 2019); *Gonzalez v. Colvin*, No. 15-CV-2159, 2016 WL 5477591, at *12 n.3 (E.D.N.Y. Sept. 28, 2016) ("[A]lthough ALJs may consult medical experts, they are not required to do so."); *see also Cole v. Astrue*, No. 06-CV-769, 2013 WL 4398974, at *4 (S.D.N.Y. Aug. 7, 2013) ("Plaintiff provides no support for his claim that [the ALJ] was *required* to consult an expert in addition to reviewing the medical evidence in the record.") (emphasis in original).

### 4. As to the Vocational Expert

Briefly, the entirety of the Plaintiff's second issue is that, because ALJ Wexler ruled incorrectly as to the Plaintiff's residual functional capacity, she was also incorrect to rely on the testimony of a vocational expert that the Plaintiff could work as a surveillance system monitor or call out operator. The Plaintiff thus only makes arguments as to Step Four of the sequential evaluation process, pertaining to his residual functional capacity, and not as to Step Five, which would have raised issues as to what particular jobs the Plaintiff could perform. The Court thus denies the Plaintiff's second claim because it has already ruled that substantial evidence supports ALJ Wexler's determination as to the Plaintiff's residual functional capacity.

## III. CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's Rule 12(c) motion, grants the Defendant's Rule 12(c) cross-motion, and dismisses the complaint.

The Clerk of Court is respectfully directed to close the case.

It is **SO ORDERED.**

_____/s/ Artur D. Spatt_____ \_\_\_November 21, 2019\_\_\_

Arthur D. Spatt, U.S.D.J. Date